# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

CRAIG T. GOLDBLATT
JUDGE



824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832

April 18, 2023

**<u>VIA CM/ECF</u>**

    Re:    *In re Port Neches Fuels, LLC*, No. 22-10500

Dear Counsel:

    On February 22, 2023, the Court issued a Memorandum Opinion holding that certain claims that plaintiffs sought to assert in state court were barred by this Court's plan injunction. The Court directed plaintiffs to seek this Court's approval of any subsequent amended complaint to ensure compliance with that plan injunction.[1] Both sides appealed the order implementing that Memorandum Opinion. Nevertheless, on March 23, 2023, the plaintiffs submitted their revised, seventh amended complaint,[2] which is the subject of this letter ruling. The Supporting Sponsors argue that this Court is without jurisdiction to rule on the validity of the amended complaint while the matter is on appeal, but that even if that were not the case, the Supporting Sponsors maintain that plaintiffs' amended complaint suffers from the same defects as their original complaint.[3] For the reasons described below, the Court will overrule the Supporting Sponsors' objection and allow plaintiffs to file their complaint in state court.

---

[1] *In re TPC Group Inc.*, No. 22-10493 (CTG), 2023 Bankr. LEXIS 446 (Bankr. D. Del. Feb. 22, 2023).

[2] Original Case D.I. 1476. Citations in this letter ruling to "Original Case D.I. _" refer to the debtors' original bankruptcy case titled *In re TPC Group Inc.* No. 22-10493. Since the filing of plaintiffs' amended complaint, that case was closed. Going forward, all matters pertaining to the debtors' bankruptcy case will be docketed in the case titled *Port Neches Fuels, LLC*, No. 22-10500. These cases were all previously jointly administered. To the extent the Court cites to the docket in the *Port Neches* case, it will do so as "Surviving Case D.I. _".

[3] Surviving Case D.I. 13.

*In re Port Neches Fuels, LLC*
April 18, 2023
Page 2 of 11

## Factual and Procedural Background

The facts of this case are well known to the parties and thus set out herein only in brief.  The reorganized debtors own and operate a petrochemical business.[4]  The plaintiffs allege that they are the victims of an explosion at one of the debtors' plants in Port Neches, Texas.  Prior to the petition date, several residents of Port Neches brought suit in Texas state court against, among others, the debtors and their equity sponsors, seeking to recover damages on account of injuries they allegedly suffered as a result of the explosions.[5]  By virtue of the plan of reorganization confirmed by this Court in the debtors' bankruptcy, the debtors agreed to release all claims and causes of action belonging to the estate that the debtors or the estate would have been entitled to assert against the Supporting Sponsors.[6]  That release is backed by a plan injunction that prohibits creditors from asserting any such claim.  Plaintiffs, however, are entitled to pursue their own claims so long as those claims "belong to them, rather than being estate causes of action.  If the claims belong to the estate, then they are released … and the assertion of such claims is enjoined…".[7]

In advance of the February 2023 ruling, plaintiffs submitted to this Court a proposed sixth amended complaint that they argued complied with the plan's injunction.[8]  But, as the Court explained in its Memorandum Opinion, the complaint contained claims for veil-piercing that, under Third Circuit law, were claims that belonged to the estate and were therefore subject to the releases and injunction contained in the plan.  The Court concluded, however, that the complaint also contained claims for negligent undertaking and other potential tort claims that were "direct" causes of action belonging to the claimants.[9]  The Court therefore entered an order barring plaintiffs from pursuing any claims for veil piercing, and directing plaintiffs to submit a revised complaint that removed claims that the Court had found were barred by the injunction.  Upon this Court's approval of the revised complaint, plaintiffs would be entitled to proceed in state court.

Both sides appealed, but neither party sought an order staying further proceedings pending appeal.  Plaintiffs now seek an order that the filing of the seventh amended complaint would comply with the plan injunction.

---

[4] TPC Group Inc. and its debtor affiliates are herein referred to as the "reorganized debtors."

[5] Defendants are herein referred to as the "Supporting Sponsors."

[6] Original Case D.I. 1150-2 § 10.7(a).

[7] *In re TPC Group. Inc.*, No. 22-10493 (CTG), 2023 Bankr. LEXIS 446 at *11 (Bankr. D. Del. Feb. 22, 2023).

[8] Original Case, D.I. 1476.

[9] Opinion at 4.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). As a case within the district court's bankruptcy jurisdiction, it has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of reference.[10]  As described below, the Court concludes that the appellate divestiture rule does not strip this court of subject-matter jurisdiction.  Because the parties ask this Court to determine whether the amended complaint complies with this Court's injunction, and because this Court plainly has jurisdiction to interpret its own orders,[11] this is a core matter under § 157(b).

## Analysis

### I.  The pending appeal does not deprive this Court of jurisdiction to hear this case.

The Supporting Sponsors maintain that this Court does not have jurisdiction to hear this case by virtue of the divestiture rule.  That rule, which has been adopted by the Third Circuit, provides that "an appeal divests the lower court of any further jurisdiction over the subject of [an] appeal."[12]  The purpose of the divestiture rule is "to avoid the confusion of placing the same matter before two courts at the same time and preserve the integrity of the appeal process."[13]  The contours of the divestiture rule as applied to a bankruptcy proceeding, however, are less than clear.  As one court explained:

> [A] bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal. The application of a broad rule that a bankruptcy court may not consider any request[s] filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.[14]

The divestiture rule therefore does not, as the Supporting Sponsors argue, stay the Court from resolving all disputes related to the subject on appeal.[15]  Rather, "the

---

[10] Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.

[11] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

[12] *In re Washington Mutual, Inc.*, 461 B.R. 200, 217 (Bankr. D. Del. 2011).

[13] *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2012 Bankr. LEXIS 2611 at *6 (Bankr. D. Del. June 7, 2012) (internal quotations omitted).

[14] *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 758 (1st Cir. BAP 2007).

[15] *In re Tribune*, 472 B.R. 223.

correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it."[16]  This Court, in a bench ruling deciding an earlier dispute arising in this bankruptcy case, put the point a bit more colloquially:

> At bottom, what [the divestiture] rule is about is, it is a directive to trial courts that they should not play Lucy-and-the-football with the appellate courts; your decision may not be a moving target.  Once it is on appeal, the trial court should keep its hands off the decision that is the subject of the appeal.  Once Charlie Brown starts to run, the football needs to stay where it is.[17]

The Court's first task is to identify the football.  The rulings that are now on appeal are as follows:  *First*, a claim for veil piercing is property of the estate under the framework articulated by the Third Circuit in *In re Emoral*.[18]  *Second*, as property of the estate, these claims were released pursuant to the debtors' plan of reorganization and their prosecution is barred by the injunction provided therein.  *Third*, unlike veil-piercing claims, claims for negligent undertaking and other torts arising out of the Supporting Sponsors' independent misconduct are not property of the estate and therefore not subject to this Court's injunction.

Under the divestiture rule, the Court is now barred from moving the football:  The Court may not undermine its ruling by now holding that veil-piercing claims are not property of the estate; that the debtors' prepetition claims against the Supporting Sponsors were not released; or that the remaining claims for negligent undertaking and other intentional torts are now property of the estate under § 541.  Had the seventh amended complaint contained the same defects as the previous complaint, the Court would not be free to alter its ruling by permitting a claim to go forward that would have been precluded by the decision now on appeal.

This letter ruling keeps the football in place.  The Supporting Sponsors maintain that "[a]ny substantive analysis of the Seventh Amended Complaint by this Court would go beyond enforcing the Order," because the Court "necessarily would be expanding on the Order while it is on appeal in contravention of the divestiture

---

[16] *In re Washington Mutual*, 461 B.R. at 217 (explaining that "so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it."); *In re NNN 400 Capitol Ctr. 16 LLC*, No. 21-816 (CFC), 2022 U.S. Dist. LEXIS 53116 at *23 (same) (citing *In re Campanile*, No. 17-24902 (JNP), 2019 Bankr. LEXIS 593 at *2 (Bankr. D.N.J. Feb. 25, 2019) ("Under the divestiture rule, so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it.")).

[17] July 29, 2022 Hr'g Tr. at 179.

[18] 740 F.3d 875 (3d Cir. 2014).

rule."[19] That is incorrect; all that is prohibited by the divestiture rule is the alteration of an appealed order. Here, the Court is neither altering nor enlarging its appealed order – the Court is enforcing it. The crux of the Court's Opinion – that the sixth amended complaint contained certain claims that were prohibited by the plan injunction – is not subject to reconsideration in this Court. Rather, the Court is determining whether the changes made in the seventh amended complaint cure those defects. If so, the revised complaint may proceed in state court; if not, it is barred by this Court's injunction. Neither of those two outcomes alters in any way the Court's reasoning as set out in the Memorandum Opinion.

Defendants also argue that because the sixth and seventh amended complaints are fundamentally indistinguishable, allowing plaintiffs to file the seventh amended complaint in state court would be tantamount to allowing the sixth amended complaint to proceed as well[20] – a result that would be inconsistent with this Court's prior ruling. But that is a merits question; the defendants' argument rests on the presumption that the two amended complaints are identical. To the extent the Court were to agree with that assertion, the Court would enjoin plaintiffs from filing in state court. If, on the other hand, the seventh amended complaint is sufficiently different as to comply with this Court's injunction, the Court will enforce its previous order and allow the claims to proceed.

Finally, even if the Court holds that it is not divested of jurisdiction, the Supporting Sponsors ask this Court to exercise its discretion and refrain from resolving this dispute. In support of that argument, defendants rely on *In re Pursuit Capital Management, LLC*.[21] In that case, defendants appealed a sale order, asking the reviewing court to determine whether a bankruptcy court may, in connection with a sale order, authorize a chapter 7 trustee to sell and assign its power to prosecute estate causes of action to a non-fiduciary, and, if such an order is appropriate, whether it can be done absent an evidentiary showing that the claims are "colorable."[22]

While that case was pending before the Third Circuit, plaintiffs, who had acquired their causes of action pursuant to the sale order, initiated several adversary proceedings against the defendants. Defendants moved to dismiss, arguing, among other things, that plaintiffs lacked standing to bring these claims because only the chapter 7 trustee was authorized to litigate estate causes of action – the same argument defendants asked the Third Circuit to consider. Although this question

---

[19] Surviving Case D.I. 13 at 3.

[20] *Id.*

[21] No. 14-10610 (LLS), 2017 WL 2537234 (Bankr. D. Del. June 9, 2017).

[22] *Id.* at *8.

*In re Port Neches Fuels, LLC*
April 18, 2023
Page 6 of 11

was before the Third Circuit for determination, as a matter of straightforward application of the divestiture rule, Judge Silverstein explained that:

> A high level, semi-syllogistic approach to the divestment rule is as follows: The Sale Order approved the transfer of the causes of action delineated therein to the Plaintiffs. Relying on the Sale Order, the Plaintiffs filed the Complaint and the Defendants filed the Motion to Dismiss. The bases that underlie the Motion to Dismiss are matters on which I did not rule in the Sale Order so any ruling on the Motion to Dismiss will not alter or enlarge the Sale Order. . .Therefore, I can rule on the Standing and Jurisdictional Defenses.[23]

Regardless, because of the "unique posture" of that case – including the fact that the defendants placed the issue of standing before two courts by appealing the sale order and filing their motion to dismiss – the Court held that "[o]n balance, [the Court] find[s] it prudent not to rule on the Standing and Jurisdictional Defenses prior to a ruling by the Third Circuit."[24] Informing the court's decision was the concern that defendants only sought a ruling on the motion to dismiss in order to provide them "with optionality on whether to proceed with their appeal" depending on the resolution of the motions to dismiss.[25] Although the divestiture rule did not bar such gamesmanship, the court decided to exercise its discretion and refrain from deciding the issue of standing.

Those concerns are not present here. Moreover, other concerns counsel against holding the matter in abeyance. The parties represented to the Court that the Texas state court before which the underlying claims are pending has effectively stayed that litigation in deference to this Court's authority to enforce the automatic stay and resolve disputes over the scope of the plan injunction. Having now resolved those issues (subject, of course, to appellate review), this Court believes that appropriate respect for the Texas state court counsels in favor of permitting that court to proceed on claims that this Court has found do not violate the plan injunction.

Relatedly, the Court views the Supporting Sponsor's request that the Court defer ruling to be, in effect, an attempt to obtain a stay pending appeal without meeting the requirements to obtain such a stay. In substance, there can be no question that this Court's failure to permit the revised form of complaint to proceed in state court would operate to stay proceedings in state court for however long the appellate process may run. But Bankruptcy Rule 8007 and other applicable law set forth specific requirements and standards that a movant must meet to obtain such a

---

[23] *Id.* at *10.

[24] *Id.*

[25] *Id.*

stay.  This Court does not believe that it would be appropriate to, in effect, grant that substantive relief without holding the Supporting Sponsors to their burden of satisfying those standards.  The Court will accordingly turn to the merits.

## II.   **Plaintiffs' seventh amended complaint does not violate the plan injunction.**

Plaintiffs maintain that they have complied with this Court's directive by stripping the seventh amended complaint of all veil-piercing allegations; all that remains are allegations of the Supporting Sponsors' independent misconduct.  The Supporting Sponsors disagree.  *First*, defendants argue that plaintiffs failed to remove Count VIII (now Count VII) from their amended complaint, despite warnings from this Court that "Count VIII must be dropped and the various assertions about veil piercing and hiding behind the corporate shield must be stripped out."[26]  *Second*, the Sponsors contend, more broadly, that the seventh amended complaint fails to comply with this Court's Opinion because it is still "littered with veil-piercing allegations."[27]  The Court disagrees with both points.

The Supporting Sponsors ask the Court to enforce its prior decision and strike Count VII from the seventh amended complaint.  In its Opinion, the Court commented that, in its view, "despite being labeled 'Direct Liability of the Owners and Sawgrass Holdings GP LLC,' [the count] is in substance a claim for veil piercing."[28]  As such, the Court required plaintiffs to remove Count VIII – which is the previous iteration of Count VII – from the sixth amended complaint.  In their seventh amended complaint, plaintiffs have not removed the count, but instead sought to amend the substantive allegations to comport with the Court's ruling.  Count VII, which has the same title as the prior Count VIII, in substance now seeks to hold defendants liable "in their personal and individual capacities for negligence, negligent undertaking and direct participation in the events designed to create a fraudulent depiction of TPC's value. . ."[29]  Count VII goes on to describe the extent of defendants' operational control over TPC, including an allegation that debtors required defendants' approval for certain expenditures.[30]  Count VII ends with the allegation that but for defendants' refusal to authorize certain safety expenditures,

---

[26] *In re TPC Group. Inc.*, 2023 Bankr. LEXIS 446 at *6.

[27] Surviving Case D.I. 13 at 7.

[28] *In re TPC Group. Inc.*, 2023 Bankr. LEXIS 446 at *7-8.

[29] Original Case, D.I. 1476-2 ¶ 129.

[30] *Id*. ¶ 130.

*In re Port Neches Fuels, LLC*
April 18, 2023
Page 8 of 11

the explosion would never have occurred. Accordingly, plaintiffs seek to hold defendants liable "for their direct conduct engaged in for their personal benefit. . .".[31]

Importantly, plaintiffs have removed the parts of the prior count that the Court found to be inconsistent with the plan injunction. For example, plaintiffs struck the portion of Count VIII arguing that "the distinct corporate identity of the corporation— TPC—will not protect" defendants if "recognizing the distinct corporate identity will frustrate the ability of injured parties to seek damages," a hallmark of alter ego allegations.[32] Similarly, plaintiffs removed language from Count VIII urging that defendants should not be allowed "to hide their independent torts behind the corporate form of TPC,"[33] or "rely upon the [separate] existence of [distinct legal entities] . . . to escape the imposition of . . . obligations . . . for which they should be held liable."[34] With these sections removed, all that remains are allegations that defendants, through their control of the debtors, voluntarily assumed a duty safely to manage debtors' affairs, and breached that duty by failing to approve certain safety precautions. Such claims, although reliant on facts that might also support a claim for veil piercing (but for the fact that such a claim is enjoined), are not barred by the plan's injunction. Accordingly, Count VII may proceed as stated.

Turning to defendants' broader objection, the crux of defendants' argument is that the amended complaint may not proceed in state court because it fails to remove the "various assertions about veil piercing and hiding behind the corporate shield."[35] Defendants propose an "easy rule of thumb" to determine whether an allegation is a veil-piercing allegation: "if the allegation is really about actions TPC took at the alleged instruction of the Supporting Sponsors . . . that is a veil-piercing allegation."[36] Defendants go on to list several allegations included in the amended complaint that they argue fail this test.[37] Because plaintiffs failed to comply with the Court's prior decision, defendants maintain that "many of [plaintiffs'] claims against the

---

[31] *Id.* ¶ 132.

[32] Original Case D.I. 1363-2 ¶ 135.

[33] *Id.* ¶ 136.

[34] *Id.* ¶ 137.

[35] *In re TPC Group, Inc.*, 2023 Bankr. LEXIS 446 at *6.

[36] Surviving Case D.I. 13 at 7.

[37] These include the following: "[Defendants] exercised direct, operational control and direction over TPC through the Board of Managers of Sawgrass Holdings GP LLC;" D.I. 1476-2 ¶ 47; "At all relevant times, [defendants] owned, operated, directed, controlled, conducted, and participated in the business and financial affairs of TPC and the TPC plant;" *Id.* ¶ 112; "In exercising direct, operational control over TPC's executive decisions, the Owner-defendants' voluntary actions imposed a duty to act reasonable in executing these decisions;" *Id.* ¶ 57.

Supporting Sponsors remain disguised veil-piercing claims" and are therefore barred by the debtors' plan.[38]

This Court has already rejected the Supporting Sponsors' position. In its previous Opinion, the Court noted that it was not persuaded by the Supporting Sponsors' argument that a claim for negligent undertaking was really a veil-piercing claim in disguise because both causes of actions relied on allegations that the Supporting Sponsors effectively directed the debtors' operations. As this Court explained:

> The gravamen of the claim for negligent undertaking is that the Supporting Sponsors played such an active role in directing the day-to-day affairs of the debtor that they themselves were effectively making the decisions regarding the company's safety function. Those same factual allegations – that the Supporting Sponsors effectively directed the debtor's day-to-day operations – are also the basis of their veil-piercing claim (which, as described above, is actually an estate cause of action). The factual overlap, however, does not convert the claim for negligent undertaking into a claim for veil piercing.[39]

Defendants' rule of thumb therefore proves too much. Under defendants' view, any allegation that the debtors acted under the direction of the Supporting Sponsors would be disallowed. Such allegations, however, are central to the tort of negligent undertaking, even if they may also be used to support a claim for veil piercing. It is also possible that the action of one party in directing the activity of another could itself gives rise to tort liability for the directing party without regard to the existence, or not, of any "corporate shield" between the two parties. The task of deciding whether plaintiffs' claims fall on one side of the line or another is a surgical one and therefore cannot be accomplished using an all-or-nothing test. With these points in mind, the Court can turn to the specific objections raised by defendants.

Defendants' objection to Count I, a claim for negligence per se, is that "Plaintiffs merely replaced 'TPC' with 'the Supporting Sponsors,' which confirms that plaintiffs are trying to hold the Supporting Sponsors liable for the actions of TPC."[40] In short, Count I of the amended complaint alleges that defendants were subject to, and failed to comply with, certain state-law regulations. Whether or not the debtors or the defendants were under any obligation imposed by state law is a merits question for the state court to resolve. This Court need only decide whether Count I seeks to

---

[38] Surviving Case D.I. 13 at 8.

[39] *In re TPC Group. Inc.*, 2023 Bankr. LEXIS 446 at *23-24.

[40] Surviving Case D.I. 13 at 9.

hold the Supporting Sponsors liable for their own conduct, or that of the debtors. On the face of the complaint, it is clear that Count I alleges the former.

Counts II-IV allege claims of negligence, intentional trespass, and nuisance, respectively. Defendants' main objection to Counts II-IV is that plaintiffs fail to provide sufficient information in these counts about the Supporting Sponsors' independent conduct that would give rise to liability for these alleged torts. While plaintiffs incorporate preceding factual allegations in each count, defendants maintain that "such statements and allegations . . . generally refer to the Supporting Sponsors' control over TPC, and lack any allegation pertaining to the undertaking of safety services. . ."[41] Both of these points are incorrect. *First*, in these counts plaintiffs seek to hold defendants liable for their own alleged misconduct. *Second*, although these include allegations that the Supporting Sponsors exerted substantial control over the debtors, facts that in another context might support a claim for veil piercing, those same fact may be alleged to show that the Supporting Sponsors' independent actions give rise to their own tort liability. That is how this Court reads Counts II – IV. As such, these counts do not violate the plan injunction. Whether the allegations are sufficient as a matter of Texas law, of course, is a question that is before the Texas state court rather than this one.

Count V, defendants argue, makes "general assertions regarding control over TPC and the facility that are divorced from any specific allegation that would support the Supporting Sponsors' having made any undertaking to any party in respect of the facility."[42] But defendants failed to mention that plaintiffs added several paragraphs to Count V in the seventh amended complaint alleging how defendants:

> [v]oluntarily undertook to usurp TPC's control over safety with respect to the safeguards, protocols, procedures, personnel, equipment, inspections, and resources that were readily available to prevent and/or mitigate the effects of the two uncontrolled TPC plant explosions. . .[43]

These allegations, as explained above, form the basis for a claim of negligent undertaking, and are therefore allowed under this Court's previous decision.

Count VI similarly alleges that defendants' conduct (alleged elsewhere in the complaint and incorporated by reference) resulted in the explosion at the debtors' Port Neches plants and amounted to gross negligence.[44] Most of Count VI is devoted to allegations that defendants owed duties to plaintiffs by virtue of their control over

---

[41] *Id.*

[42] *Id.*

[43] Original Case D.I. 1476-2 ¶ 114.

[44] *Id.* ¶¶ 120-127.

the debtors' maintenance and breached those duties by failing to provide adequate safety precautions.  Such allegations focus on the conduct of the Supporting Sponsors and therefore comply with this Court's Opinion.

Count X (the final count brought against all defendants) alleges that defendants unlawfully withheld information about the conditions that led to the Port Neches plant explosions and their aftermath.[45]  The Supporting Sponsors argue that Count X attempts to hold defendants liable for the debtors' duty to speak – a veil-piercing allegation.   But Count X alleges that *all* defendants negligently misrepresented the circumstances surrounding the Port Neches plant.  Whether defendants had individual duties to warn plaintiffs of the plant's conditions, and whether they breached those duties, are of course separate questions of Texas law that are not before this Court.  On the matter that is properly before this Court, it is sufficient to say that Count X does not, on its face, state a claim for veil piercing.

## Conclusion

For the reasons explained above, the Court holds that plaintiffs' seventh amended complaint sufficiently removes all allegations of veil piercing.  Plaintiffs may proceed with their complaint in state court.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[45] *Id.* ¶¶ 165-168.